Docket No. 22-55529

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

YOUNGSUK KIM,
on behalf of himself and all others similarly situated,

*Plaintiff-Appellant,*

v.

BENIHANA, INC., a Corporation,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Central District of California,
Case No. 5:19-cv-02196-JWH-KKx, Honorable John W. Holcomb

## APPELLANT'S OPENING BRIEF

KENNETH H. YOON
STEPHANIE E. YASUDA
**YOON LAW, APC**
751 N. FAIR OAKS AVE., SUITE 102
PASADENA, CALIFORNIA 91103
TEL: (213) 612-0988

PRESTON H. LIM
**LIM LAW GROUP, P.C.**
3435 WILSHIRE BLVD., SUITE 2350
LOS ANGELES, CALIFORNIA 90010
TEL: (213) 900-3000

JONG YUN KIM
**LAW OFFICES OF JONG YUN KIM**
3600 WILSHIRE BLVD., SUITE 2226
LOS ANGELES, CALIFORNIA 90010
TEL: (213) 351-9400

*Attorneys for Plaintiff-Appellant*
YOUNGSUK KIM

i

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................. 1

II.   JURISDICTIONAL STATEMENT ................................... 3

III.  STATEMENT OF ISSUES .................................................. 4

IV.  PRIMARY AUTHORITY ..................................................... 4

V.   STATEMENT OF THE CASE ............................................. 4

     A.   Background ................................................................... 4

     B.   Kim Files for Class Certification and Offers the Expert Opinions of an Economist and Survey Expert ...................... 5

     C.   The District Court Erroneously Concludes Kim's Economist Should Have Independently Verified the Accuracy of the Opinion of Kim's Survey Expert ..................................... 7

     D.   The Court Grants Kim Permission to Appeal ....................... 8

VI.  SUMMARY OF THE ARGUMENT ................................... 8

VII. ARGUMENT ...................................................................... 12

     A.   Standard of Review ......................................................... 12

     B.   The District Court Abused Its Discretion When It Excluded Dr. Forister's Benefit-of-the-Bargain Calculations ................................................................... 13

          1.   An Expert Is Permitted to Rely Upon Another Expert Who Specializes in Another Field of Expertise and Opines in the Same Case ........................................... 13

          2.   The Case Law Barring Expert Opinions That Merely Parrot Other Opinions Is Not Applicable Here .......... 16

     C.   The District Court Improperly Denied Class Certification for Lack of a Damages Model Despite Finding That Restitution May Be Calculated by a Layperson .................. 20

## TABLE OF CONTENTS (cont'd)

1. Calculations That May Be Done by a Layman Are a Sufficiently Reasonable Basis for the Calculation of Damages ........................................................................ 20

2. The District Court Committed Legal Error by Holding that the Restitution Calculations Were Not Sufficiently Complex ................................................... 22

3. The Trier of Fact Is Competent to Assign a Value to the Subject Food Products As-Received ...................... 24

D. The District Court Erred by Excluding the Hedonic Price Regression Without Reason ................................................ 27

E. The District Court's Commonality Ruling with Respect to the California Roll Was Erroneous .................................. 28

VIII. CONCLUSION ............................................................................ 32

# TABLE OF AUTHORITIES

**Page**

## Federal Cases

*Amchem Prods., Inc.* v. *Windsor,*
521 U.S. 591 (1997) ..................................................................... 12

*Anderson v. Jamba Juice Co.,*
888 F. Supp. 2d 1000 (N.D. Cal. 2012) .................................... 31

*Apple Inc. v. Motorola, Inc.,*
757 F.3d 1286 (Fed. Cir. 2014) ................................................ 15

*Arnold v. Ambulance Serv. of Bristol, Inc.,*
2007 WL 5117409 (E.D. Tenn. Aug. 21, 2007) ....................... 22

*Astiana v. Kashi Co.,*
291 F.R.D. 493 (S.D. Cal. 2013) .............................................. 30

*Bruno v. Quten Research Inst., LLC,*
280 F.R.D. 524 (C.D. Cal. 2011) .............................................. 31

*Cholakyan v. Mercedes-Benz, USA, LLC,*
281 F.R.D. 534 (C.D. Cal. Mar. 28, 2012) ............................... 17

*Dura Automotive Sys. of Ind., Inc. v. CTS Corp.,*
285 F.3d 609 (7th Cir. 2002) ................................................... 15

*Gen. Elec. Capital Bus. Asset Funding Corp. v. S.A.S.E. Military Ltd.,*
2004 WL 5495588 (W.D. Tex. Oct. 6, 2004) ............................ 23

*Hanlon v. Chrysler Corp.,*
150 F. 3d 1011 (9th Cir. 1998) ................................................ 29

*Hawkins v. Comparet-Cassani,*
251 F.3d 1230 (9th Cir. 2001) ................................................. 12

*In re 5-Hour Energy Mktg. & Sales Pracs. Litig.,*
2017 WL 2559615 (C.D. Cal. June 7, 2017) ............................ 24

*In re ConAgra Foods, Inc.*
302 F.R.D. 537 (C.D. Cal. 2014) ...................................... 11, 16

# TABLE OF AUTHORITIES (cont'd)

**Page**

*Kaupelis v. Harbor Freight Tools USA, Inc.*,
2020 WL 5901116 (C.D. Cal. Sept. 23, 2020) .........................................23

*Manufacturers' Acc. Idem. Co. v. Dorgan*,
58 F. 945 (6th Cir. 1893) ................................................................ 18, 19

*Mazza v. Am. Honda Motor Co.*,
666 F.3d 581 (9th Cir. 2012) ...................................................................29

*Pulaski & Middleman, LLC v. Google, Inc.*,
802 F.3d 979 (9th Cir. 2015) .....................................................14, 21, 25

*Sementilli v. Trinidad Corp.*,
155 F.3d 1130 (9th Cir.1998) ..................................................................23

*Sharpe v. Puritan's Pride, Inc.*,
466 F. Supp. 3d 1066 (N.D. Cal. 2020) ...................................................14

*Tokio Marine & Fire Ins. Co. v. Norfolk & Western Ry. Co.*,
1999 WL 12931 (4th Cir.1999) ...............................................................18

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016) ................................................................................15

*Vasquez v. Superior Court*,
4 Cal. 3d 800 (1971) ...............................................................................30

*Williams v. Gerber Prods. Co.*,
552 F.3d 934 (9th Cir. 2008) .................................................................8, 29

*Williamson v. Citrix Online, LLC*,
792 F.3d 1339 (Fed. Cir. 2015) ..............................................................15

*WWP, Inc. v. Wounded Warriors Family Support, Inc.*,
628 F.3d 1032 (8th Cir. 2011) ................................................................22

## State Cases

*Collins v. eMachines, Inc.*,
202 Cal. App. 4th 249 (2011) ..................................................................30

# TABLE OF AUTHORITIES (cont'd)

**Page**

*In re Steroid Hormone Prod. Cases,*
181 Cal. App. 4th 145 (2010) .................................................. 29

*In re Tobacco II Cases,*
46 Cal. 4th 298 (2009) ........................................................ 30

*Zhang v. Superior Court,*
57 Cal. 4th 364 (2013) ........................................................ 25

## Federal Rules and Statutes

28 U.S.C. § 1446(a) ........................................................... 3

28 U.S.C. § 1453(b) ........................................................... 3

28 U.S.C. §1332(d) ............................................................ 3

Fed. R. Civ. Proc. 23 .................................................. *passim*

Fed. R. Evid. 702 ......................................................... 11, 22

## State Rules and Statutes

Cal. Bus. & Prof. Code § 17200 *et seq.* ................................. 1, 5

Cal. Bus. & Prof. Code § 17500 *et seq.* ................................. 1, 5

Cal. Civ. Code § 1750 *et. seq.* ..................................... 1, 5, 14

# I.    INTRODUCTION

By this action, Plaintiff-Apellant Youngsuk Kim ("Kim")
generally alleges that Defendant-Appellee Benihana, Inc. ("Benihana")
engaged in seafood fraud by labeling several of its sushi rolls (the
"Subject Food Products") to contain crab, when in fact, the items do not
contain any real crab. For each of the Subject Food Products,
Benihana's menu lists "crab" as one of the ingredients in the particular
sushi roll. At the end of each "crab" label is a † dagger symbol, which
refers the reader to a disclaimer at the bottom of the menu: "Kani
kama crab and kani kama crab mix contain imitation crab."[1] (IV-ER-
539.) Kim alleges the express "crab" label and vague disclaimer were
likely to mislead consumers into believing the Subject Food Products
contained some percentage of real crab. Kim asserts violations of
California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 *et
seq.* ("UCL")), the False Advertising Law (Cal. Bus. & Prof. Code §
17500 *et seq.* ("FAL")), the Consumer Legal Remedies Act (Cal. Civ.
Code § 1750 *et. seq.*("CLRA")), and breach of express warranty.

Kim sought class certification under Rule 23 of a class of persons
who purchased the Subject Food Products that Benihana's menu
labeled to contain "crab," as well as several Subclasses. As part of his

---

[1]    The exception to this is the California Roll, which omits any
ingredient listing or "crab" label, but is nevertheless followed by the
same † dagger symbol and thus directs the customer to the same
disclaimer. (IV-ER-539.)

motion, Kim introduced expert evidence in the form of a survey conducted by expert Dr. Thomas J. Maronick, DBA, JD, that revealed the majority of potential Benihana customers believed the "crab" label meant the sushi roll contained some percentage of real crab. (IV-ER-705.) Kim also introduced the benefit-of-the-bargain and restitutionary damages calculations of expert economist, Eric F. Forister, Ph.D., which used figures from Dr. Maronick's survey for purposes of the benefit-of-the-bargain calculations. Benihana moved to exclude the opinions of Dr. Maronick and Dr. Forister.

The district court issued a ruling denying Benihana's motion to exclude Dr. Maronick's report, granting Benihana's motion to exclude Dr. Forister's report, and denying class certification. (I-ER-27.) The district court found that Dr. Forister was required, but failed, to "assess independently whether Maronick's conclusions were accurate" with respect to the benefit-of-the-bargain damages calculations. (I-ER-17.) For the restitutionary damages calculations, which Dr. Forister calculated as a percentage of the purchase price, the district court found that Dr. Forister had performed "simple arithmetic that can be done by a layperson." (I-ER-18.) The court concluded that Kim had satisfied the commonality requirement imposed by Federal Rule of Civil Procedure 23 (for all products other than the California Roll), and had demonstrated that Benihana's alleged misrepresentations were material for purposes of predominance, but had failed to present a

viable damages model in light of the court's exclusion of Dr. Forister's expert report. (I-ER-27.) With respect to the California Roll, the district court found that Kim had failed to demonstrate the existence of common questions because "the California Roll does not meet typicality requirements." (I-ER-24.)

Kim now appeals the district court's denial of class certification because it was premised upon the erroneous conclusions that an expert must independently verify the accuracy of the opinion of another expert in a different field, that a model of damages that can be calculated by a layperson is not a viable damages model, and that commonality under Rule 23 imposes a typicality requirement.

## II.    JURISDICTIONAL STATEMENT

The district court exercised jurisdiction of this action under the Class Action Fairness Act of 2005 (28 U.S.C. §1332(d)). On November 13, 2019, Benihana removed this action to the district court under 28 U.S.C. §§ 1446(a) and 1453(b). Kim did not seek remand.

This Court has jurisdiction to hear this appeal pursuant to Federal Rule of Civil Procedure 23(f). The district court entered its order denying class certification on February 22, 2022. Appellants timely filed their petition for permission to appeal the order on March 8, 2022. Fed. R. Civ. Proc. 23(f). The Court granted the petition on May 27, 2022. (IV-ER-805.)

## III.   STATEMENT OF ISSUES

(1)    Whether the district court abused its discretion in excluding the opinion of Kim's expert economist, Dr. Forister, on the grounds Dr. Forister should have independently assessed the accuracy of the conclusions reached by an expert in another field (Kim's survey expert, Dr. Maronick);

(2)    Whether the district court abused its discretion when it ruled that Kim presented a model of restitutionary damages that may be easily calculated by a layperson without the need for expert opinion, but simultaneously found that Kim failed to present a viable damages model;

(3)    Whether the district court abused its discretion by ruling that a product must meet typicality standards in order to raise common questions.

## IV.   PRIMARY AUTHORITY

The relevant statutory provisions are set forth in the attached Statutory Addendum.

## V.   STATEMENT OF THE CASE

## A.   <u>Background</u>

Kim filed the instant putative class action in the California Superior Court for the County of San Bernardino on September 26, 2019. Therein, Kim alleged Benihana had engaged in a pattern and practice of labeling certain sushi rolls to contain crab, when they did

4

not contain any real crab meat. Kim asserted claims under California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL")), California's False Advertising Law (Cal Bus & Prof. Code § 17500 *et seq.* ("FAL")), the California Consumers' Legal Remedies Act (Cal. Civ. Code § 1750 *et seq.* ("CLRA")), California common law, and the consumer laws of sister states. (IV-ER-769.)

Benihana removed this action to the District Court for the Central District of California on November 19, 2019. Kim did not seek remand. The district court thereafter granted Benihana's unopposed motion to dismiss Kim's claims under the consumer laws of sister states.

**B.**    **Kim Files for Class Certification and Offers the Expert Opinions of an Economist and Survey Expert**

On September 27, 2021, Kim filed a motion for class certification, seeking to represent thousands of Benihana customers who purchased the Subject Food Products in California. Therein, Kim asserted that reasonable consumers are likely to be misled by Benihana's "crab" ingredient listing on its menu for each of the Subject Food Products, because there is no dispute that the Subject Food Products contain no real crab. There is also no dispute that Benihana, as a matter of company policy, disseminated menus containing the same ingredient listings to every customer. In support of his motion, Kim proffered expert reports of survey expert Dr. Thomas J. Maronick, DBA, JD,

economist Eric F. Forister, Ph.D., and restaurant management expert
Janet Lowder.

Pertinent here are the opinions of Dr. Maronick and Dr. Forister.
Dr. Maronick conducted a survey of potential Benihana customers in
California, which resulted in the following findings: (1) 36% of survey
respondents believed the Shrimp Crunchy Roll was 100% real crab,
while 29% believed it was a mix of real and imitation crab, which
resulted in an average belief of 53.7% real crab content (53.7% = 36%
respondents x 100% crab content + 29% respondents x 61.1% crab
content); and (2) willingness to pay was higher for the roll as labeled
than if it was labeled 100% imitation crab. (IV-ER-710-711).

Dr. Forister then calculated benefit-of-the-bargain and
restitutionary damages. For benefit-of-the-bargain damages, Dr.
Forister used a hedonic price regression by comparing the price of real
and imitation crab sushi rolls at 42 restaurants "to determine the price
premium for 100 percent real crab versus 100 percent imitation." (II-
ER-200.) He then multiplied the real crab premium by survey
respondents' average belief of the crab content (53.7%) ascertained
from Dr. Maronick's survey. (*Id.*) Dr. Forister multiplied the resulting
number by the total amount paid by consumers to calculate the benefit-
of-the-bargain damages." (*Id.*) For restitutionary damages, he
calculated a refund of 25%, 50%, 75%, and 100% of the purchase price
of the Subject Food Products. (IV-ER-594.)

6

**C.** **The District Court Erroneously Concludes Kim's Economist Should Have Independently Verified the Accuracy of the Opinion of Kim's Survey Expert**

On February 22, 2022, the district court issued a ruling denying Benihana's motion to exclude Dr. Maronick's report, granting Benihana's motion to exclude Dr. Forister's report, and denying class certification. (I-ER-27.) The district court found that Kim had adequately demonstrated the existence of questions common to the class (for all Subject Food Products except the California Roll), and had introduced sufficient evidence that Benihana's alleged misrepresentation was material for purposes of Rule 23's predominance requirement. (I-ER-24, 25-26.) However, in light of its exclusion of Dr. Forister's report, the district court concluded that Kim had failed to present a viable model of damages. (I-ER-27.)

In particular, the district court held that Dr. Forister was required, but failed, to "assess independently whether Maronick's conclusions were accurate" with respect to the benefit-of-the-bargain damages calculations. (I-ER-17.) The district court further held that Dr. Forister's opinion as to restitutionary damages, calculated as a percentage of the purchase price, was "simple arithmetic that can be done by a layperson." (I-ER-18.) Despite concluding that Kim had satisfied the commonality requirement imposed by Rule 23, had demonstrated the alleged misrepresentation was material as required by the predominance requirement of Rule 23, and had presented a

7

model of damages that could be "done by a layperson," the district court nevertheless held Kim had failed to present a viable damages model in light of the court's exclusion of Dr. Forister's expert report. (I-ER-27.)

## D.  **The Court Grants Kim Permission to Appeal**

On March 8, 2022, Kim requested permission to appeal the district court's denial of certification because it was premised upon the erroneous conclusions that an expert must independently verify the accuracy of the opinion of another expert in a different field, and on the further erroneous conclusion that a model of damages that can be calculated by a layperson is not a viable damages model.

The Court granted Kim's petition on May 27, 2022. (IV-ER-805.)

## VI.  SUMMARY OF THE ARGUMENT

Kim, along with thousands of other California consumers, are customers of Benihana Restaurant, an American teppanyaki chain. On behalf of a putative class of other customers, Kim generally alleges that Benihana fraudulently labeled several of its sushi rolls to contain crab, when in fact, it is undisputed that the items do not contain any real crab.

Kim moved for class certification under California's consumer fraud statutes: the FAL, UCL, and CLRA. These claims are evaluated from the vantage point of a "reasonable consumer." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). Under that test, a plaintiff must "show that members of the public are likely to be

8

deceived" by the alleged misrepresentation. *Id*. (internal quotation marks omitted). Kim has introduced undisputed evidence that (1) the ingredient list on Benihana's menu uniformly states the Subject Food Products contain "crab," (2) the Subject Food Products do not contain real crab, (3) Benihana's menu labeling is consistent across menus throughout the class period, and (4) Benihana's menu is, as a matter of policy, disseminated to every customer who visits Benihana. (III-ER-420-421.) Kim's claims raise a significant common question that may be resolved for all class members at once: whether Benihana's "crab" label was likely to mislead a reasonable person into believing that the Subject Food Products contain real crab.

In support of his motion for class certification, Kim introduced the expert opinions of his survey expert Dr. Maronick, and his expert economist Dr. Forister. Dr. Maronick conducted a survey of potential Benihana customers in California, and concluded that 65% of survey respondents believed the specified sushi roll contained some percentage of real crab, with an average belief of 53.7% real crab content. (IV-ER-710.) He also found willingness to pay was higher for the roll as labeled than if it was labeled 100% imitation crab. (IV-ER-710-11; *see also* IV-ER-578.)

Dr. Forister then calculated benefit-of-the-bargain and restitutionary damages. For benefit-of-the-bargain damages, Dr. Forister used a hedonic price regression by comparing the price of real

and imitation crab sushi rolls at 42 restaurants "to determine the price premium for 100 percent real crab versus 100 percent imitation." (II-ER-200).) He then multiplied the real crab premium by survey respondents' average belief of the crab content (53.7%) ascertained from Dr. Maronick's survey. (*Id*.) From those figures, he was able to calculate the benefit-of-the-bargain damages. (*Id*.) For restitution, he calculated damages as a refund of the purchase price in increments of 25%, 50%, 75%, and 100%. (IV-ER-594.)

The district court excluded Dr. Forister's report on the grounds that Dr. Forister failed to "assess independently whether Maronick's conclusions were accurate" for the benefit-of-the-bargain damages calculations, and that Dr. Forister's restitution calculations were "simple arithmetic that can be done by a layperson." (I-ER-17, 18.) The district court ruled the Kim had sufficiently demonstrated the existence of common questions as to whether consumers were likely to be deceived by Benihana's "crab" labeling, but found that Kim had failed to present a viable damages model as required by the predominance requirement of Rule 23. (I-ER-24, 27.) The district court also found Kim had failed to demonstrate commonality with respect to the California Roll on the grounds the California Roll is not typical of the other Subject Food Products. (I-ER-24.)

The district court abused its discretion by excluding Dr. Forister's report and thereupon denying class certification. Experts are not only

permitted to rely upon the opinions of other experts in different fields, but moreover, are required to. Dr. Forister was not competent to opine as to what Dr. Maronick's survey results meant, or whether Dr. Maronick's conclusions were accurate. *See In re ConAgra Foods, Inc.* 302 F.R.D. 537, 556 (C.D. Cal. 2014) (expert's opinion regarding consumer understanding of product labels was improper where expert lacked expertise in marketing or consumer reactions). Dr. Forister properly used the survey findings when he conducted his own calculations and formed his own opinion as to the amount of benefit-of-the-bargain damages in this case.

For restitution, Dr. Forister's opinion required large calculations and the compilation of data to determine refund amounts of 25% to 100% of the purchase price. His opinion was squarely within the realm of permitted expert opinion as one that is helpful to the Trier of Fact. Fed. R. Evid. 702(a). Moreover, if the district court had been correct that the restitutionary calculations are "simple arithmetic that can be done by a layperson," then the district court's conclusion that Kim had failed to introduce a viable model of damages is necessarily incorrect; according to the district court, Kim introduced a model of damages that does not require an expert opinion.

The district court also abused its discretion by concluding Kim had not demonstrated commonality with respect to the California Roll. While the district court expressly declined to address typicality, it

11

improperly required Kim to demonstrate the California Roll was typical of the other Subject Food Products. The district court's ruling not only conflated the Rule 23 requirements of typicality and commonality, but moreover, stated an incorrect standard of typicality.

For the foregoing reasons and as discussed in further detail below, the Court should reverse the order of the district court for its abuse of discretion in excluding Dr. Forister's report and denying class certification.

## VII.  ARGUMENT

### A.  **Standard of Review**

"A district court's decision regarding class certification is reviewed for abuse of discretion." *Hawkins v. Comparet-Cassani,* 251 F.3d 1230, 1237 (9th Cir. 2001). "A court abuses its discretion if its certification order is premised on legal error." *Id.* Because certifying classes bears on the substantive rights of putative class members, courts of appeals must rigorously scrutinize district courts' application of Rule 23. *Amchem Prods., Inc.* v. *Windsor,* 521 U.S. 591, 612-19 (1997).

As discussed in further detail below, the district court committed legal error when it concluded that Kim's expert economist should have independently verified the accuracy of the conclusions reached by Kim's survey expert. The district court further erred when it held that Kim's model of restitutionary damages may be easily calculated by a layperson without the need for expert opinion, but simultaneously

found that Kim failed to present a viable damages model. Finally, the district court erred when it held that commonality requires a showing that a product meets a typicality standard. The Court should therefore reverse the district court's order striking the opinion of Kim's expert economist and denying class certification.

## B. The District Court Abused Its Discretion When It Excluded Dr. Forister's Benefit-of-the-Bargain Calculations

### 1. An Expert Is Permitted to Rely Upon Another Expert Who Specializes in Another Field of Expertise and Opines in the Same Case

The district court premised its entire denial of class certification on its improper exclusion of Kim's expert evidence. In no uncertain terms, the district court held that expert economist, Dr. Forister, failed to "assess independently whether [survey expert] Maronick's conclusions were accurate." (I-ER-17.) For that reason, the district court excluded Dr. Forister's opinion. (*Id.*) In doing so, the court created a blanket rule for expert testimony: an expert may never rely upon the opinion of another expert in a different field – even when the other expert is subject to cross examination in the same case – without opining as to whether the other expert's opinion is correct. The district court's rule is indefensible and will have significant and far-reaching consequences.

On a motion for class certification, "California law requires only that some reasonable basis of computation of damages be used, and the

damages may be computed even if the result reached is an approximation." *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 986 (9th Cir. 2015) (cleaned up). Here, Kim proffered two cognizable measures of damages to the district court: benefit-of-the-bargain and restitution. While no specific measure of damages is required for claims under the CLRA, the statute expressly allows actual damages and restitution as separate remedies. Cal. Civil Code § 1780(a)(1), (3). Actual damages generally includes a benefit-of-the-bargain measure, which is "the difference in value between what the plaintiff actually received and what he was fraudulently led to believe he would receive." *Sharpe v. Puritan's Pride, Inc.*, 466 F. Supp. 3d 1066, 1076 (N.D. Cal. 2020) (cleaned up). Where benefit-of-the-bargain will not return the plaintiff to the status quo, a court has broad discretion to craft an appropriate restitutionary remedy.

For benefit-of-the-bargain damages, Dr. Forister calculated the price premium charged by restaurants for real crab as compared to fake crab (41.8%), and applied that figure to the percentage of real crab that consumers believed was in the Subject Food Products (53.7%, which is a number he obtained from Dr. Maronick's survey). He concluded that about 18% of what Benihana customers paid was a price increase that Benihana was able to charge based upon its alleged misrepresentations. (IV-ER-589.) In so concluding, Dr. Forister appropriately relied upon the survey findings of Dr. Maronick. "Experts

14

routinely rely upon other experts hired by the party they represent for expertise outside their field." *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1321 (Fed. Cir. 2014), *partly overruled in respect not relevant here by Williamson v. Citrix Online, LLC,* 792 F.3d 1339, 1348 (Fed. Cir. 2015) (en banc in part); *see also Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 450 (2016) (district court did not err in granting class certification where damages expert relied upon a study conducted by industrial relations expert regarding the amount of time employees spent donning and doffing uniforms). "[I]t is common in technical fields for an expert to base an opinion in part on what a different expert believes on the basis of expert knowledge not possessed by the first expert." *Dura Automotive Sys. of Ind., Inc. v. CTS Corp.,* 285 F.3d 609, 609-13 (7th Cir. 2002).

Dr. Forister is an expert economist, and he was no in a position to comment on the propriety or meaning of the underlying survey. To do so would have been inappropriate and outside the scope of his expertise. Dr. Maronick's survey revealed that the majority (65%) of consumers surveyed believed the "crab" label on Benihana's menu meant the sushi roll contained some percentage of real crab, with an average belief of 53.7% real crab content. (IV-ER-710.) Dr. Forister then calculated damages based upon the survey figures. It was not within the scope of Dr. Forister's work to "assess the accuracy" of the survey, because he does not have the necessary expertise to opine as to

what the survey results meant. The Court should reverse the district court's order excluding Dr. Forister's report and denying class certification.

### 2. The Case Law Barring Expert Opinions That Merely Parrot Other Opinions Is Not Applicable Here

The district court cited *In re ConAgra Foods, Inc.* 302 F.R.D. 537, 556 (C.D. Cal. 2014), for the proposition that Dr. Forister was required to assess the accuracy of the opinions reached by Dr. Maronick. (Order 16:15-18.) However, *ConAgra* does not stand for that proposition, and the district court's decision was thus based upon a legal error.

In *ConAgra*, the plaintiff's expert opined as to consumers' meaning of the word "natural" on food product packaging, based upon his review of consumer surveys he had read. *ConAgra*, 302 F.R.D. at 555. The district court held that this was inappropriate because the expert possessed "no expertise in marketing or consumer reactions," and had "merely reviewed the surveys prepared by marketing experts" and reported what they had found. *Id.* There was no indication that the expert had "independently tested or evaluated the results of the surveys or otherwise personally researched what consumers believe 'natural.'" *Id.* Significantly, the district court also stated that had the surveys been before the court, the expert could have properly incorporated them into his work so long as the surveys were relevant and reliable. *Id.*

Underlying the opinion in *ConAgra* and the cases cited therein is the courts' intent to proscribe expert opinions that "merely parrot[] the opinions and conclusions of another expert whose testimony is now shielded from cross-examination." *Cholakyan v. Mercedes-Benz, USA, LLC*, 281 F.R.D. 534, 544 (C.D. Cal. Mar. 28, 2012) (cited by Benihana). Such is not the case here, for several reasons. First, Dr. Forister independently calculated damages in this action. Specifically, Dr. Forister performed his own hedonic price regression to obtain a price premium for real crab by comparing the prices of real and imitation crab rolls from 42 restaurants. He then multiplied that figure by the percentage of real crab that survey respondents believed was in the Subject Food Products, which yielded the price increase that Benihana was able to charge by allegedly misrepresenting the crab content of the Subject Food Products. (II-ER-200.) Thus, while Dr. Forister looked to Dr. Maronick's survey results for the percentage of crab content that consumers believed was in the Subject Food Products, the hedonic price regression and calculations were his own. The price premium for real crab sushi rolls calculated by Dr. Forister may be multiplied by any percentage of perceived crab content. Dr. Forister made no attempt to restate the opinion of Dr. Maronick as though it was his own.

Second, Dr. Maronick was not shielded from cross examination. Dr. Maronick is a witness in this case who was, in fact, deposed by

Benihana. Moreover, his opinion was found admissible by the district court. While it is true that "one expert may not give the opinion of another expert who does not testify," *Tokio Marine & Fire Ins. Co. v. Norfolk & Western Ry. Co.,* 1999 WL 12931 at *4 (4th Cir.1999), such is not the case here, where Dr. Maronick did testify.

Third, the rationale underlying law cited by the district court and Benihana directly conflicts with the district court's ruling. In *ConAgra*, for example, part of the problem with the challenged expert opinion was that the expert was offering an opinion based on consumer survey work he did not perform in a field that was outside of his realm of expertise. *ConAgra*, 302 F.R.D. at 556. In other words, Dr. Forister was not permitted to offer the type of opinion the district court claimed was required.

*ConAgra* and its predecessor cases find their origins in *Manufacturers' Acc. Idem. Co. v. Dorgan*, 58 F. 945 (6th Cir. 1893). In *Dorgan*, an accident insurance case, the physician who performed an autopsy testified that the condition of the decedent's lungs was consistent with a particular manner of death. *Id.* at 949. A second physician was then asked whether, based upon the first physician's testimony, the autopsy performed was sufficient to determine the cause of death. *Id.* The Sixth Circuit held that this question was improper: "This question was clearly incompetent, because it asked the witness, who was a physician, to make his own inference as to what the

18

evidence of the other witness tended to show, and then, upon such inference, to give his opinion." *Id.* Relevant here, the court stated that "the witness was asked to weight other men's evidence, a function peculiarly belonging to the jury." *Id.* Thus, under *Dorgan*, an expert is not permitted to judge the accuracy of another expert opinion or weigh the evidence upon which the earlier opinion relies. This directly conflicts with the district court's ruling in the case at bar. Had Dr. Forister opined as to the accuracy of Dr. Maronick's opinion, or what Dr. Maronick's survey tended to show, his opinion would have violated the very law underlying the district court's decision.

The district court incorrectly concluded that "experts are required to verify the validity and reliability of the data on which they rely." (I-ER-17.) Although it appears the court believed Dr. Forister should have requested the raw survey data to determine whether or not the survey said what Dr. Maronick claimed, it was not within Dr. Forister's purview to interpret survey results. This is precisely the sort of opinion that is proscribed by *Dorgan* and *ConAgra*; Dr. Forister was not permitted to "make his own inference as to what the evidence of the other witness tended to show, and then, upon such inference, to give his opinion." *Dorgan*, 58 F. at 949. Thus, the district court's decision was manifestly erroneous, and should be reversed for abuse of discretion.

**C.** **The District Court Improperly Denied Class Certification for Lack of a Damages Model Despite Finding That Restitution May Be Calculated by a Layperson**

    **1.** **Calculations That May Be Done by a Layman Are a Sufficiently Reasonable Basis for the Calculation of Damages**

The district court erred in finding that Kim had failed to present a viable damages model in light of the district court's conclusion that restitution may be calculated by a layperson.

Kim proffered a model of restitution damages by Dr. Forister's expert report, wherein Dr. Forister calculated a 25%, 50%, 75%, and 100% refund of the purchase price of the Subject Food Products. These figures would permit the Trier of Fact to assign a damages award after determining the percentage of value that class members received from the Subject Food Products as sold. The Trier of Fact would be free to select any figure it so chose for the retained value, or could rely upon Kim's evidence including the average cost of imitation crab rolls (IV-ER-660-662), and the amount survey respondents would be willing to pay for 100% imitation crab rolls (IV-ER-710).

The district court excluded Dr. Forister's calculation of restitutionary damages on the grounds the calculations are "simple arithmetic" that "do not rely on specialized knowledge or expertise." (I-ER-18.) The district court's ruling is incompatible with its simultaneous finding that Kim had failed to present a viable damages model without Dr. Forister's report. If calculating a partial to full

refund of the purchase price is a computation within the common knowledge of a layman, then Kim's damages model does not depend upon Dr. Forister. The district court failed to state any reason why restitution, to be calculated by the Trier of Fact in whatever percentage the Trier of Fact deems appropriate, is not a viable damages model. California law "requires only that some reasonable basis of computation of damages be used, and the damages may be computed even if the result reached is an approximation." *Pulaski*, 802 F.3d at 986. Kim has proposed a reasonable basis of computation that the district court found is a matter of "simple arithmetic" that may be easily performed without the use of an expert. (I-ER-18.) The district court's characterization of the restitution damages calculation should have precluded its ruling that Kim failed to present a reasonable model of damages.

When followed to its logical conclusion, the district court's denial of class certification equates to a ruling that matters of simple arithmetic that may be done by a layperson are insufficient to serve as reasonable basis for the computation of damages in a consumer class action. This is a legal error and the district court's order should be reversed.

## 2. The District Court Committed Legal Error by Holding that the Restitution Calculations Were Not Sufficiently Complex

To be clear, although the district court's ruling means Kim presented a viable model of restitution that may be calculated by a layperson, Kim does challenge the district court's exclusion of Dr. Forister's opinion regarding restitutionary damages at the outset. While it is true that a calculation of the full and partial refund amount for the Subject Food Products is not overly complicated, there is no requirement in the Federal Rules of Evidence that experts proffer complicated calculations. *WWP, Inc. v. Wounded Warriors Family Support, Inc.*, 628 F.3d 1032, 1040 (8th Cir. 2011) (holding that there is no requirement in Fed. R. Evid. 702 for the proffered expert to make complicated mathematical calculations.); *see also Arnold v. Ambulance Serv. of Bristol, Inc.*, 2007 WL 5117409, at *1 (E.D. Tenn. Aug. 21, 2007) (holding that "what is a simple mathematical computation to one person may be mind-numbingly complicated to another. Secondly, if these calculations are as simple as defendants suggest they are . . . then those jurors who are mathematically knowledgeable will immediately so recognize and wonder why the plaintiffs utilized a CPA to prove the obvious.")

"In determining whether expert testimony is admissible under Rule 702, the district court must keep in mind [the rule's] broad parameters of reliability, relevancy, and assistance to the trier of

22

fact." *Sementilli v. Trinidad Corp.,* 155 F.3d 1130, 1134 (9th Cir.1998) (internal quotation marks omitted). Dr. Forister is an economist and considered a number of relevant factors in his damages analysis, such as analyzing details of Benihana's sales data, as well as other spreadsheets relating to sales records of the food products. (IV-ER-678; V-ER-922.) The efforts of gathering this data and calculating damages provides assistance to the trier of fact. *See, e.g., Kaupelis v. Harbor Freight Tools USA, Inc.*, 2020 WL 5901116, at *4 (C.D. Cal. Sept. 23, 2020) ("[The defendant]'s argument that Weir's calculation of historic sales figures is 'simple arithmetic' if anything underscores how it is reliable for purposes for resolving class certification based on Rule 23 criteria."); *Gen. Elec. Capital Bus. Asset Funding Corp. v. S.A.S.E. Military Ltd.*, 2004 WL 5495588, at *5 (W.D. Tex. Oct. 6, 2004) (compilation of data and "documentation into a presentable format" is helpful to the Trier of Fact in light of the cumbersome nature of the task).

Dr. Forister's restitutionary calculations are the appropriate subject of an expert opinion. The district court therefore erred in two steps: first, by excluding Dr. Forister's opinions as a matter of "simple arithmetic," and second, by finding that Kim could not offer a viable damages model without Dr. Forister's opinion. For these reasons, the district court abused its discretion in striking the expert opinion of Kim's economist and denying class certification.

### 3. The Trier of Fact Is Competent to Assign a Value to the Subject Food Products As-Received

The district court relegated to a footnote the following comment: "Another shortcoming in Kim's model for restitution damages is that he neither 'account[s] for the value that consumers receive from' the Food Products, nor does he "account for other factors that may drive consumer preferences."' (I-ER-27) (quoting *In re 5-Hour Energy Mktg. & Sales Pracs. Litig.*, 2017 WL 2559615, at *10-*11 (C.D. Cal. June 7, 2017)). The district court erred to the extent it relied on this statement to justify the exclusion of Dr. Forister's report, for several reasons. To start, the issue raised in *5-Hour Energy* was one of reliance: the court found the plaintiffs had not sufficiently shown the statements on the product were material because the plaintiffs had not produced a consumer survey or research indicating how consumers reacted to the product labels, *i.e.*, whether the front labels were material to consumers. *5-Hour Energy*, 2017 WL 2559615, at *8. This was particularly significant because the plaintiffs failed to produce a common "controlling definition" for the "key term in the alleged misstatement" – energy. *Id.* Here, however, there is but one dictionary definition for the word "crab," and the district court already found that whether Benihana's misrepresentation was material is a question common to the class. (I-ER-25.)

Second, Kim introduced a survey here that demonstrated how consumers reacted to Benihana's label. As discussed above, Dr.

24

Maronick's survey indicated consumers understood Benihana's label to mean that the Subject Food Products contain real crab, with an average belief of 52.3% real crab content. The district court found Dr. Maronick's survey admissible. Thus, unlike the lack of evidence as to consumer understanding for the label in *5-Hour Energy*, Kim introduced evidence here of consumer understanding that the district court found admissible.

Third and most importantly, assigning the amount of appropriate restitution is fully within the ambit of the Trier of Fact. There is no mandatory, one-size-fits-all formula for determining what portion of an unfair exchange should be restored to an aggrieved party. That decision is entrusted to "the broad discretion of the trial court." *Zhang v. Superior Court*, 57 Cal. 4th 364, 371 (2013). In situations where a defendant's misrepresentations induce the plaintiff to part with money for a service or good, "the focus is on the difference between what was paid and what a reasonable consumer would have paid at the time of purchase without the fraudulent or omitted information." *Pulaski*, 802 F.3d at 989. Here, Kim put forward evidence for the calculation of a 25%, 50%, 75%, and 100% refund, to permit the Trier of Fact to determine on its own what a reasonable consumer would have paid for the Subject Food Products if they had been properly labeled. At this stage in the litigation, Kim is only required to provide a reasonable computation of damages, and the partial refund model is sufficient

because it is indisputable that real crab costs more than fake crab. The value of the Subject Food Products as sold is necessarily less than the value of the Subject Food Products as labeled, and the Trier of Fact is competent to assign a retained value from the objective reasonable person standard.

Further, while it appears the district court faulted Kim for not quantifying the value of the Subject Food Products as received, Kim did introduce sufficient evidence of the value at the time of sale. As discussed below, the district court did not challenge Dr. Forister's hedonic price regression, and the district court abused its discretion by excluding the hedonic price regression without justification. From the price regression and Dr. Maronick's survey, there is sufficient evidence that the value of the Subject Food Products as-sold is about 18% less than the price charged by Benihana. (IV-ER-589.)

There is no dispute here that if the "crab" label was misleading, then the Subject Food Products as-labeled were necessarily more valuable than the Subject Food Products received. The district court's proposal to let Benihana keep the fraudulently-obtained premium despite this fact was an abuse of discretion.

26

### D. The District Court Erred by Excluding the Hedonic Price Regression Without Reason

The district court also erred when it excluded the remainder of Dr. Forister's report – namely, the hedonic price regression – without justification.

In its order, the district court systematically addressed Dr. Forister's benefit-of-the-bargain, restitution, and cost savings calculations, and excluded each of those portions in turn. (I-ER-16, 17, 19.) The district court then concluded by excluding Dr. Forister's entire report. (I-ER-19.) This was an abuse of discretion. The court failed altogether to discuss Dr. Forister's hedonic price regression, and gave no justification for excluding the entirety of Dr. Forister's report. There is no valid reason for excluding the work done by Dr. Forister, which was a "reliable method of estimating the price premium of product attributes in established markets." (IV-ER-585).

The district court abused its discretion in excluding the benefit-of-the-bargain and restitution damages portions of Dr. Forister's report as discussed above. However, had the district court only (improperly) excluded those portions of the report it actually addressed, there would still have been sufficient evidence in the record to serve as a reasonable basis for the computation of damages, namely, Dr. Forister's hedonic price regression and the opinions offered by Dr. Maronick. Specifically, there would have been evidence that restaurants are able to charge a 42% premium for real crab versus fake crab, and that survey

respondents believe the Subject Food Products contain 54% real crab. With this information, the Trier of Fact would have all of the information necessary to assess benefit-of-the-bargain damages for the class, and would have had a guideline by which to assess the value of the Subject Food Products as-received for purposes of restitution. [2]

The district court abused its discretion when it excluded Dr. Forister's hedonic price regression without justification.

**E.** **The District Court's Commonality Ruling with Respect to the California Roll Was Erroneous**

With respect to the California Roll only, Kim asserts that Benihana's labeling of the product amounts to a misleading omission. Benihana omitted any ingredient list for this particular menu item, and most critically, omitted that the California Roll contains only imitation crab meat. A consumer reading the menu would be met only with a statement that kani kama and kani kama crab mix contain imitation crab, which says nothing of whether or not the roll contains any percentage of real crab. At class certification, Kim argued that

---

[2] For example, if the Trier of Fact determines that a reasonable person would have believed the Subject Food Products contained 60% real crab content, then Benihana was able to charge a 25.2% premium for its misrepresentations (42% premium of 60% perceived real crab). This would mean 20% of each roll charged by Benihana was a premium for the misrepresentation (because a 25.2% premium on the fake crab price is 20% of the purchase price (25.2%/ (100%+25.2%))), or about $2.00 to $3.00 per roll. The hedonic price regression alone is sufficient to calculate these figures.

whether a reasonable consumer was likely to be misled by the way Benihana labeled the California Roll was a question common the class.

The district court held that Kim had failed to demonstrate commonality with respect to "Benihana's omission and disclaimer" for the California Roll, because "the California roll does not meet typicality requirements." (I-ER-24.) In so holding, the district court committed legal error by conflating the class action requirements of typicality and commonality. "[C]ommonality requires that the class members' claims depend upon a common contention such that determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012). Typicality, however,  is established if the representative claims are reasonably co-extensive with the class and do not differ significantly. *Hanlon v. Chrysler Corp.*, 150 F. 3d 1011, 1020 (9th Cir. 1998).

Claims under the UCL, FAL, and CLRA are evaluated from the vantage point of a "reasonable consumer," which requires a plaintiff to demonstrate that members of the public are likely to be deceived by the alleged misrepresentation. *Williams*, 552 F.3d at 938. Consumers are then presumed to have relied upon the alleged misrepresentations if they were material. *In re Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 156 (2010). "A misrepresentation is judged to be 'material' if 'a reasonable man would attach importance to its existence

or non-existence in determining his choice of action in the transaction[.]'" *In re Tobacco II Cases*, 46 Cal. 4th 298, 327 (2009). Fraudulent omissions are similarly actionable when the defendant makes partial representations that are misleading because some other material fact has not been disclosed. *Collins v. eMachines, Inc.,* 202 Cal. App. 4th 249, 255 (2011).

At the class certification stage of litigation, the proponent of class certification need not demonstrate that representations or omissions were actually material, or that members of the public were in fact likely to be deceived by the labeling. Rather, there must be sufficient evidence to demonstrate that these questions are capable of resolution on a class-wide basis. *See, e.g.*, *Astiana v. Kashi Co.*, 291 F.R.D. 493, 505 (S.D. Cal. 2013) (materiality is to be determined by the trier of fact at trial). In cases alleging a deceptive labeling or advertising scheme under the UCL, CLRA, FAL, and common law, it is well-settled that where "numerous consumers are exposed to the same dubious practice by the same seller . . . proof of the prevalence of the practice as to one consumer would provide proof for all." *Vasquez v. Superior Court*, 4 Cal. 3d 800, 808 (1971). In the case at bar, Kim introduced evidence that Benihana omitted any ingredient list for the California Roll, Benihana's menu labeling is consistent across menus throughout the class period, and Benihana's menu is, as a matter of policy, disseminated to every customer who visits Benihana. (*See, e.g.*,

III-ER-341-42, 420-21, IV-ER-539.) Kim introduced sufficient evidence to demonstrate that whether Benihana committed a material omission with respect to its California Roll presents common questions that may be tried – and resolved – on a class-wide basis.

The district court expressly declined to address typicality, and its discussion of the California Roll's typicality was premature. However, Kim is also typical of the class for his claims with respect to the California Roll. In cases where the plaintiff seeks to represent class members who purchased similar, but not identical, products, the critical inquiry is "whether there is sufficient similarity between the products purchased and not purchased." *Anderson v. Jamba Juice Co.*, 888 F. Supp. 2d 1000, 1005 (N.D. Cal. 2012) (cleaned up); *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 530 (C.D. Cal. 2011) ("District courts in California routinely hold that the issue of whether a class representative may be allowed to present claims on behalf of others who have similar, but not identical interests depends not on standing, but on an assessment of typicality and adequacy of representation."). Here, Kim challenges Benihana's labeling of sushi rolls that all contained the same imitation crab ingredient, were all listed on the same menu, and all directed the reader to the same disclaimer. While Kim acknowledges the California Roll did not contain the "crab" label, the California Roll serves as the base for many of the other Subject Food Products, meaning that the other rolls

are simply a California Roll with additional ingredients placed on top. (V-ER-1014-15.) Thus, the products are all substantially similar, and Kim's claims are typical of the class with respect to the California Roll.

## VIII. CONCLUSION

For all the foregoing reasons, Kim respectfully requests the Court issue an order reversing the district court's exclusion of the expert report of Dr. Forister, and reversing the district court's ruling on commonality with respect to the California Roll, and reversing the district court's denial of class certification.

Dated: October 5, 2022      Respectfully Submitted,

YOON LAW, APC


     */s/ Stephanie E. Yasuda*
Stephanie E. Yasuda
Attorneys for Plaintiff- Appellant
Youngsuk Kim

## STATEMENT OF RELATED CASE

Pursuant to Circuit Rule 28–2.6 of the Rules of the United States Court of Appeals for the Ninth Circuit, Appellant and his counsel state they are unaware of any related cases pending in this Court.

Dated: October 5, 2022          Respectfully submitted,

YOON LAW, APC

*/s/ Stephanie E. Yasuda*

Stephanie E. Yasuda
Attorneys for Plaintiff-Appellant
Youngsuk Kim

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
### Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** | 22-55529

I am the attorney or self-represented party.

**This brief contains** | **7,386** | **words**, excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

☉ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one):*

  ○ it is a joint brief submitted by separately represented parties;

  ○ a party or parties are filing a single brief in response to multiple briefs; or

  ○ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated [          ].

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | */s/ Stephanie E. Yasuda* | **Date** | October 5, 2022
*(use "*s/[typed name]*" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8** | *Rev. 12/01/2018*

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing Opening Brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on October 5, 2022. All participants in the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

Dated: October 5, 2022      _/s/ Stephanie E. Yasuda_
                                       Stephanie E. Yasuda